Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/10/2020 04:10 PM CDT

IN RE INTEREST OF VLADIMIR G., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
ABIGAIL G., APPELLANT.

___ N.W.2d ___

Filed June 12, 2020.    No. S-19-645.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Constitutional Law: Self-Incrimination: Appeal and Error.** A court's decision to allow a witness to invoke his or her Fifth Amendment right against self-incrimination is reviewed for an abuse of discretion.

3. **Statutes: Judgments: Appeal and Error.** The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.

4. **Constitutional Law: Self-Incrimination.** The state and federal Constitutions provide that no person shall be compelled to give evidence against himself or herself of an incriminating nature.

5. **____: ____.** The Fifth Amendment privilege not only permits a person to refuse to testify against himself or herself during a criminal trial in which he or she is a defendant, but also grants him or her the privilege to refuse to answer questions put to him or her in any other proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him or her in future criminal proceedings.

6. **Juvenile Courts: Constitutional Law: Self-Incrimination.** In a juvenile adjudication hearing, as in any other civil proceeding, a parent may invoke his or her Fifth Amendment privilege to refuse to answer questions put to him or her where the answers might tend to incriminate him or her in future criminal proceedings.

7. **Constitutional Law: Self-Incrimination: Testimony.** The Fifth Amendment must be accorded a liberal construction in favor of the privilege against compulsory self-incrimination, and thus the analysis under the Fifth Amendment ordinarily examines an entire line of questioning to determine whether to exclude the testimonial evidence based on privilege.

8. **Constitutional Law: Witnesses: Self-Incrimination.** The Fifth Amendment privilege not only extends to answers that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant. It need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. While a witness may invoke the Fifth Amendment to avoid answering questions, the witness' assertion of the privilege does not by itself establish the risk of incrimination; instead, the court must make inquiry to determine itself whether answering the questions would raise Fifth Amendment concerns.

10. \_\_\_\_: \_\_\_\_: \_\_\_\_. A trial court is required, in the exercise of sound discretion, to determine whether the witness' claims of the Fifth Amendment privilege are justifiable.

11. \_\_\_\_: \_\_\_\_: \_\_\_\_. The trial judge necessarily is accorded broad discretion in determining the merits of a claimed Fifth Amendment privilege. Whether a witness' claim of privilege against self-incrimination is justified is a decision which rests within the trial court's exercise of sound discretion under all the circumstances then present, including the setting in which a question is asked and the nature of the testimony sought.

12. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

13. **Juvenile Courts: Parental Rights: Notice.** The factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016).

14. **Juvenile Courts: Proof.** The State has the burden to prove the allegations of a petition seeking to adjudicate a child by a preponderance of the evidence, which is the equivalent of the greater weight of the evidence.

15. **Evidence: Words and Phrases.** The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true.

Appeal from the County Court for Sioux County: Russell W. Harford, Judge. Affirmed.

Amy L. Patras, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for appellant.

Joe W. Stecher, Deputy Sioux County Attorney, for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Abigail G. appeals the order of the county court for Sioux County, sitting as a juvenile court, which adjudicated her son, Vladimir G., to be a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Abigail claims, inter alia, that the court erred when it required her to testify despite her invocation of her Fifth Amendment rights. We conclude that although Abigail could invoke her Fifth Amendment privilege in this adjudication, any error on the part of the court in requiring her testimony was not reversible error. We further conclude that there was sufficient evidence to support the adjudication. We therefore affirm the county court's order of adjudication.

## STATEMENT OF FACTS

The State filed a petition alleging that Vladimir, born in July 2016, was a child within the meaning of § 43-247(3)(a) on the basis that he "lack[ed] proper parental care by reason of the fault or habits of his parent, guardian, or custodian" or that he was "a juvenile who is in [a] situation dangerous to life or limb or injurious to [his] health." The petition was prompted when in March 2018, Vladimir was examined in a hospital and was found to have suffered injuries including abusive head trauma, a large abrasion to the back described as "rug burn," bone fractures, and multiple bruises throughout his face and body.

Vladimir's mother, Abigail, told a law enforcement officer that the injuries described above had all occurred while Vladimir was under the care of her boyfriend, Thomas Joseph Boyd. Prior to the hospital visit in March 2018, on or about February 24, Abigail had taken Vladimir to a hospital for an examination because she was concerned that Boyd might have sexually abused Vladimir. In the February examination, the doctor did not find evidence of sexual abuse but told Abigail that there were not always physical signs of sexual abuse. After the February examination, Abigail told medical and law enforcement personnel that she would no longer allow Boyd to have contact with Vladimir. After the examination in March that disclosed the injuries set forth above, Abigail told medical personnel that the injuries had occurred after the February hospital visit and that they had occurred while Vladimir was under the care of Boyd.

The adjudication hearing was held on March 6, 2019. The first witness called by the State at the hearing was Abigail. Abigail objected to testifying based on Fifth Amendment grounds. The State argued that there was nothing it would be questioning Abigail about that would incriminate her; the State further argued that because there were relevant matters to which Abigail could testify that would not incriminate her, she could not make a blanket objection to testifying and instead would need to "plead[] the Fifth" as to specific questions. The court overruled Abigail's objection after it cited Neb. Rev. Stat. § 43-279(1)(c) (Reissue 2016), which requires the court in an adjudication to inform the parties "[o]f the privilege against self-incrimination by advising the juvenile, parent, guardian, or custodian that the juvenile may remain silent concerning the charges against the juvenile and that anything said may be used against the juvenile." The court reasoned that the focus of the statute was the juvenile's, and not a parent's, right to remain silent. Prior to Abigail's testimony, rather than requiring Abigail to object to specific questions, the State stipulated that Abigail had a continuing objection to testifying on Fifth Amendment grounds.

Thereafter, Abigail generally testified to the effect that, notwithstanding her suspicions in February 2018 about Boyd's conduct regarding Vladimir, she continued to leave Vladimir in Boyd's care during March when all the serious injuries occurred. Abigail testified regarding three specific injuries that occurred in March while Vladimir was in Boyd's care and what Boyd told her after she noticed the injuries. Abigail testified that Boyd told her that a bruise around Vladimir's eye was caused when Vladimir threw a tantrum and hit himself on a bedpost; that a rug burn was caused when Boyd's son, who is near in age to Vladimir, dragged Vladimir across the carpet; and that an injury to Vladimir's arm occurred when Vladimir and Boyd's sons were playing together and Boyd's dog got involved in the play and knocked Vladimir over and into a piece of furniture. On cross-examination, Abigail testified that she believed the reasons given by Boyd regarding how the injuries occurred and that she did not believe that Boyd had caused the injuries.

Abigail also testified regarding the concerns that prompted her to seek the medical examination in February 2018. She testified that she was concerned Vladimir had been sexually abused and that she thought Boyd might have been involved because Boyd "was up in the middle of the night with" Vladimir and Boyd's two sons. She testified that she talked with medical and law enforcement personnel regarding her concerns in February 2018, but she did not recall that anyone had told her not to allow Boyd to have contact with Vladimir; nor did she recall telling the law enforcement officer that she would not allow Boyd to have further contact with Vladimir. Abigail also testified that at the time of the hearing, she continued to have a sexual relationship with Boyd; Abigail had objected to the question that prompted this testimony on the basis, in addition to the continuing Fifth Amendment objection, that the petition for adjudication had not given her notice that her continuing relationship with Boyd was a basis for the adjudication.

At the conclusion of Abigail's testimony, the court indicated that it had given further thought to its earlier ruling regarding Abigail's invocation of her Fifth Amendment rights. The court referred to Neb. Rev. Stat. § 43-279.01 (Reissue 2016), which provides in relevant part:

> (1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 or when termination of parental rights is sought pursuant to subdivision (6) of section 43-247 and the parent, custodian, or guardian appears with or without counsel, the court shall inform the parties of the:
>
> . . . .
>
> (d) Right to remain silent as to any matter of inquiry if the testimony sought to be elicited might tend to prove the party guilty of any crime.

The court stated that based on its reading of § 43-279.01, parents in an adjudication hearing might have a Fifth Amendment or at least a statutory right to remain silent in response to questions that might implicate them in a crime. The court, however, doubted that any of Abigail's testimony was of that sort, and the State, represented by the county attorney, stated it did not intend to file charges against Abigail and that it "would grant any immunity for that testimony for any charges." Abigail moved to strike her testimony on Fifth Amendment grounds and argued that the county attorney's offer of immunity was insufficient because other authorities could prosecute Abigail and because immunity should have been granted prior to her testimony. The court overruled Abigail's motion to strike her testimony and stated: "I think that if anybody tries to prosecute [Abigail], that there would be a defense based on both what [the county attorney] said and what I — how I ruled today on the bench that — that she does have that right [to remain silent]."

Other evidence at the hearing included the testimony of the sheriff's deputy who had spoken with Abigail in February 2018 regarding her concern that Boyd had sexually abused

Vladimir. The deputy testified, inter alia, that at that time, Abigail told him that she would never again allow Boyd to have contact with Vladimir. He also testified that he did not further investigate Abigail's concerns because the medical examination did not reveal evidence of sexual abuse and because Abigail had stated that she would no longer allow Boyd to have contact with Vladimir.

Prior to Abigail's testimony, the court had received into evidence two depositions offered by the State—depositions of a doctor and of a nurse who had examined and treated Vladimir in March 2018. The State described the depositions as being offered by "joint motion," and Abigail did not object to admission of the depositions. Both the doctor and the nurse agreed that Vladimir's injuries were as alleged in the petition for adjudication. The doctor stated that he suspected nonaccidental trauma based on "multiple fractures on different sides of the body" in combination with "the whole story with all of his injuries." The nurse stated in her deposition that Vladimir's injuries were consistent with abuse and that she suspected abuse based on the "constellation" of injuries. The nurse also stated, contrary to Abigail's testimony at the hearing, that she did not think Boyd had caused the injuries and that in March 2018, Abigail had stated to the nurse that she had not talked to Boyd since the injuries to Vladimir, that she did not want Boyd around, and that she had concerns that Boyd had hurt Vladimir.

After the adjudication hearing, the county court filed an order in which it found Vladimir to be a child within the meaning of § 43-247(3)(a). Based on the testimony and depositions received at the hearing, the court found that the injuries to Vladimir would not have occurred in the absence of abuse or neglect, that the injuries occurred when Vladimir was with Boyd, and that the injuries occurred when Vladimir was under the control of Abigail, who had left him with Boyd in March 2018 despite concerns that prompted her to seek the medical examination in February. Based on these findings,

the court concluded that "Abigail's interest in maintaining her relationship with . . . Boyd, or her lack of concern about the safety and well[-]being of Vladimir, or both, caused Vladimir to have been placed in the position of sustaining on multiple occasions the injuries he suffered."

In the adjudication order, the court also briefly addressed the Fifth Amendment issue. The court recognized Abigail's assertion that her right to remain silent had been violated. However, the court stated that it was "important to note" that her testimony at the hearing was "for the most part" consistent with things she had said to both the doctor and the nurse and were set forth in their depositions and in medical records that were made exhibits to those depositions. The court further stated that "Abigail's counsel introduced those [depositions and attached] exhibits into evidence before Abigail was called to testify."

Abigail appeals the order adjudicating Vladimir.

## ASSIGNMENTS OF ERROR

Abigail claims that the county court erred when it (1) violated her constitutional and statutory right to remain silent by forcing her to testify at the adjudication hearing and (2) found that there was sufficient evidence that Vladimir was a child within the meaning of § 43-247(3)(a).

## STANDARDS OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Giavonni P.*, 304 Neb. 580, 935 N.W.2d 631 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Jordan B.*, 300 Neb. 355, 913 N.W.2d 477 (2018).

[2] A court's decision to allow a witness to invoke his or her Fifth Amendment right against self-incrimination is

reviewed for an abuse of discretion. *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013).

[3] The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court. *In re Interest of Giavonni P., supra*.

## ANALYSIS

*Abigail Could and Did Invoke Fifth Amendment Privilege, but Any Error in Requiring Her Testimony Was Not Reversible Error.*

Abigail first claims that the county court violated her constitutional and statutory right to remain silent by forcing her to testify at the adjudication hearing. We conclude that Fifth Amendment rights may be invoked by a parent in an adjudication proceeding; however, we conclude that any error in requiring Abigail to testify over such invocation was not reversible error.

We first address whether Abigail was entitled to invoke the Fifth Amendment privilege in this adjudication hearing. The court initially appeared to determine that Abigail's Fifth Amendment rights were not implicated in this adjudication because § 43-279(1)(c) addressed only the right of the juvenile to remain silent. However, after Abigail had testified, the court appeared to recognize that Abigail's Fifth Amendment rights were implicated in this adjudication, and the court cited § 43-279.01, which refers to informing the "parties" to an adjudication of their "[r]ight to remain silent." We note that for purposes of the juvenile code, "[p]arties means the juvenile as described in section 43-247 and his or her parent, guardian, or custodian." Neb. Rev. Stat. § 43-245(18) (Supp. 2019). Although the court appeared to credit § 43-279.01 as the source of a parent's right to remain silent in an adjudication, we clarify that § 43-279.01 requires the juvenile court to inform the parties to an adjudication of the right to remain silent, which right stems from other sources, primarily the Fifth Amendment to the U.S. Constitution. See, also, Neb.

Const. art. I, § 12 ("[n]o person shall be compelled, in any criminal case, to give evidence against himself [or herself]"), and Neb. Rev. Stat. § 25-1210 (Reissue 2016) ("[w]hen the matter sought to be elicited would tend to render the witness criminally liable or to expose him or her to public ignominy, the witness is not compelled to answer . . ."). We note that in this case, Abigail does not assert that the court failed in its duty under § 43-279.01 to inform her of her right to remain silent, and we further note that she was not prejudiced by any such failure to inform because she did assert the right and was therefore clearly aware of the right.

There is appellate authority in Nebraska indicating that parents may claim a Fifth Amendment privilege against self-incrimination in termination proceedings. See *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998). We conclude that the privilege may also be invoked by a parent in the adjudication phase of a juvenile proceeding.

[4-6] The state and federal Constitutions provide that no person shall be compelled to give evidence against himself or herself of an incriminating nature. See *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013). The Fifth Amendment privilege not only permits a person to refuse to testify against himself or herself during a criminal trial in which he or she is a defendant, but also grants him or her the privilege to refuse to answer questions put to him or her in any other proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him or her in future criminal proceedings. *State v. Phillips, supra*. See *In re Interest of Clifford M. et al., supra* (citing *Allen v. Illinois*, 478 U.S. 364, 106 S. Ct. 2988, 92 L. Ed. 2d 296 (1986)). See, also, *Behrens v. Blunk*, 280 Neb. 984, 992, 993, 792 N.W.2d 159, 166 (2010) (privilege applies "'""at any stage of the proceeding'"""" and "'""therefore applies not only at trial, but at the discovery stage as well""'"), *modified on denial of rehearing* 281 Neb. 228, 796 N.W.2d 579 (2011). We therefore conclude that in a juvenile adjudication hearing, as in any other civil proceeding, a parent

may invoke his or her Fifth Amendment privilege to refuse to answer questions put to him or her where the answers might tend to incriminate him or her in future criminal proceedings.

Although the court in this case initially appeared to base its ruling that Abigail could not refuse to testify on an erroneous understanding that she could not invoke her Fifth Amendment privilege in this juvenile adjudication, the court ultimately appeared to recognize that she could invoke the privilege. However, the court denied Abigail's motion to strike her testimony because it determined that her testimony was not of the sort that would be subject to the Fifth Amendment privilege. That is, the court agreed with the State's argument that Abigail's testimony was not incriminating and would not subject her to criminal prosecution. We therefore review the standards a court must consider when assessing whether to honor an invocation of the Fifth Amendment privilege.

[7,8] We have stated that the Fifth Amendment must be accorded a liberal construction in favor of the privilege against compulsory self-incrimination, and thus the analysis under the Fifth Amendment ordinarily examines an entire line of questioning to determine whether to exclude the testimonial evidence based on privilege. See *State v. Phillips, supra* (citing *Hoffman v. United States*, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)). We have further explained that the privilege "'not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant.'" *State v. Phillips*, 286 Neb. at 985, 840 N.W.2d at 512 (quoting *Hoffman v. United States, supra*). It need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *State v. Phillips, supra*.

Abigail argues that her testimony in this case was subject to the Fifth Amendment privilege because the allegations in

support of adjudication were "almost identical" to statutory language criminalizing child abuse. Brief for appellant at 21. She notes that in the petition for adjudication, it was alleged that Vladimir "lack[ed] proper parental care by reason of the fault or habits of his parent" or that he was "in [a] situation dangerous to life or limb or injurious to [his] health." She compares this to the language of Neb. Rev. Stat. § 28-707(1) (Reissue 2016), which provides that a "person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be . . . (a) [p]laced in a situation that endangers his or her life or physical or mental health." She argues that if the evidence in this case could support the allegations in the petition for adjudication, then they could also support a prosecution under § 28-707(1)(a).

[9,10] While a witness may invoke the Fifth Amendment to avoid answering questions, the witness' assertion of the privilege does not by itself establish the risk of incrimination; instead, the court must make inquiry to determine itself whether answering the questions would raise Fifth Amendment concerns. *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013). A trial court is required, in the exercise of sound discretion, to determine whether the witness' claims of the Fifth Amendment privilege are justifiable. See *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). On appeal, the court's decision in this regard is reviewed for an abuse of discretion. See *State v. Phillips, supra*.

[11] The trial judge

> necessarily is accorded broad discretion in determining the merits of a claimed Fifth Amendment privilege. Whether a witness's claim of privilege against self-incrimination is justified is a decision which rests within the trial court's exercise of sound discretion under all the circumstances then present, including the setting in which a question is asked and the nature of the testimony sought.

81 Am. Jur. 2d *Witnesses* § 123 at 255 (2015).

The court in this case overruled Abigail's motion to strike her testimony, because after hearing the entirety of her testimony, the court determined that her testimony was not incriminating and it doubted that a prosecutor could "charge [Abigail] with anything based on her testimony [that day]." The county attorney who was representing the State agreed that he had "no reason to believe there's any crime that has been committed by [Abigail]," and he further stated that he had "no . . . intention of filing" any charges against Abigail and "would grant any immunity for that testimony for any charges." On appeal, the State repeats its argument that Abigail's testimony was not incriminating, and it further argues that her testimony was "not only not incriminating, but rather exculpatory." Brief for appellee at 4. The State characterizes as "completely exculpatory" Abigail's testimony that "she was not present when three of the significant injuries occurred," that "she did not know how other injuries had occurred," and that "Boyd was taking care of Vladimir when all three of the significant injuries happened." *Id*.

In this case, the court had broad discretion to determine whether Abigail's testimony was incriminating and therefore subject to the Fifth Amendment privilege. Reviewing such decision for an abuse of discretion, we note that the court had valid reasons for its determination under all the circumstances present. The general tone of Abigail's testimony was to deflect blame from herself for Vladimir's injuries and in that sense could be considered exculpatory. Furthermore, the court needed to consider whether there was a real threat that Abigail would be prosecuted based on her testimony, and in addition to the court's own assessment that the testimony was not incriminating, the county attorney assured the court that he agreed with that assessment and that he had no plans to prosecute Abigail. The court and the county attorney also agreed that Abigail would have "immunity" of some sort in any potential criminal prosecution.

Abigail notes, however, that although she denied that Vladimir was in her care when he sustained his injuries or that she knew what caused his injuries, she testified that the injuries occurred when Vladimir was in Boyd's care and that she had left Vladimir in Boyd's care. It is arguable that at a minimum, Abigail's testimony could provide a link in the chain of evidence to prove that under § 28-707(1), she "negligently caus[ed] or permit[ted Vladimir] to be . . . (a) [p]laced in a situation that endanger[ed] his . . . life or physical or mental health." Abigail further argues that although the county attorney assured the court he had no intention to prosecute Abigail and would give her "immunity" for her testimony, there were other authorities who could prosecute her; that the promise of immunity was not effective, because it occurred after her testimony; and that the authority of the court to grant such immunity in a juvenile proceeding was questionable.

[12] We determine that in order to resolve the appeal of the adjudication order, we need not conclusively decide whether the court abused its discretion in its determination that Abigail's testimony was not incriminating. We determine that even if the court erred in determining that Abigail's testimony was not subject to her invocation of the Fifth Amendment privilege, in this adjudication proceeding, such error was not reversible error. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019). We determine that the admission of Abigail's testimony in this adjudication did not unfairly prejudice a substantial right of Abigail's for two main reasons.

First, we determine that the testimony did not unfairly prejudice Abigail's rights with respect to the adjudication of Vladimir because, as we discuss in connection with Abigail's assignment of error regarding sufficiency of the evidence, there was sufficient evidence to adjudicate Vladimir even if Abigail's arguably incriminating testimony were stricken.

Second, admission of the testimony in this adjudication did not unfairly prejudice Abigail's Fifth Amendment rights because the Fifth Amendment is not violated unless and until a person's self-incriminating statements are used to prosecute that person in a criminal proceeding. If the court in this adjudication erred in determining that Abigail's testimony was not incriminating, the use of such testimony in a criminal proceeding would be subject to challenge in that criminal proceeding on Fifth Amendment grounds. We further explain this second reason.

In *Chavez v. Martinez*, 538 U.S. 760, 770, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003), a four-judge plurality of the U.S. Supreme Court said that although the Fifth Amendment's self-incrimination privilege may be asserted in a civil proceeding, "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." In a separate concurrence, two judges did not join the entirety of the plurality's analysis but agreed that "the core of the guarantee against compelled self-incrimination is the exclusion of any such evidence" in a criminal prosecution. *Chavez v. Martinez*, 538 U.S. at 777 (Souter, J., concurring; Breyer, J., joins). The four-judge plurality noted that courts had created certain "prophylactic rules" that were not in themselves rights protected by the Fifth Amendment but were "designed to safeguard the core constitutional right protected by the Self-Incrimination Clause." *Chavez v. Martinez*, 538 U.S. at 770. Such prophylactic rules included rules allowing invocation of the Fifth Amendment in noncriminal cases to refuse to provide testimony "unless that testimony has been immunized from use and derivative use in a future criminal proceeding before it is compelled." *Chavez v. Martinez*, 538 U.S. at 770-71. The plurality stated that in order to prevent waiver of the right against self-incrimination, "it is necessary to allow assertion of the privilege prior to the commencement of a 'criminal case' to safeguard the core Fifth Amendment trial right," and

that "insistence on a prior grant of immunity is essential to memorialize the fact that the testimony had indeed been compelled and therefore protected from use against the speaker in any 'criminal case.'" *Chavez v. Martinez*, 538 U.S. at 771-72. As part of this analysis, the plurality in *Chavez v. Martinez* cited, inter alia, an earlier decision of the Court in which it stated:

> [A] witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.

*Lefkowitz v. Turley*, 414 U.S. 70, 78, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973) (citations omitted).

Based on the precedent of *Chavez v. Martinez* and *Lefkowitz v. Turley*, we determine that even if the court abused its discretion when it determined Abigail's testimony was not incriminating and not protected by her invocation of the Fifth Amendment privilege, Abigail's Fifth Amendment rights were not violated by requiring her to testify in this civil proceeding, and instead a Fifth Amendment violation would occur only if the testimony were used in a criminal proceeding. Also, as we read this authority, Abigail memorialized her invocation of the Fifth Amendment privilege, and whether or not her testimony was adequately protected by promises of immunity made by the State and the court, her testimony, if incriminating, would be inadmissible against her in a later criminal prosecution.

We conclude that Abigail could and did invoke her Fifth Amendment privilege in this adjudication. However, we further conclude that any error on the part of the court when it determined her testimony was not incriminating and therefore not subject to the Fifth Amendment privilege is not reversible error in this adjudication.

*Even Without Abigail's Arguably Incriminating*
*Testimony, There Was Sufficient Evidence*
*to Support the Adjudication.*

Abigail next claims that the evidence in this case was not sufficient to support the adjudication of Vladimir. We conclude that the evidence was sufficient.

The State in its petition alleged that Vladimir was a child who "lack[ed] proper parental care by reason of the fault or habits of his parent, guardian, or custodian" or that he was "a juvenile who is in [a] situation dangerous to life or limb or injurious to [his] health." Both are statutory bases for adjudicating a child to be under the jurisdiction of a juvenile court pursuant to § 43-247(3)(a). In the adjudication order, the court concluded that based on the evidence, "Abigail's interest in maintaining her relationship with . . . Boyd, or her lack of concern about the safety and well[-]being of Vladimir, or both, caused Vladimir to have been placed in the position of sustaining on multiple occasions the injuries he suffered." We read this as finding that both asserted bases for the adjudication were present—that is, Vladimir was "in [a] situation dangerous to life or limb or injurious to [his] health" because he had suffered injuries on multiple occasions, and he "lack[ed] proper parental care by reason of the fault or habits of his parent" because Abigail had placed him in such situation when she left him in Boyd's care and in doing so demonstrated a lack of concern about his safety and well-being.

[13-15] The factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of § 43-247(3)(a). *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). And the State then has the burden to prove the allegations of the petition by a preponderance of the evidence, which is the equivalent of the greater weight of the evidence. *Id*. The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true. *Id*.

As we indicated above, even if Abigail's testimony that was arguably incriminating were excluded, there was sufficient evidence to support the adjudication. The evidence indicated that in February 2018, Abigail had sought a medical examination of Vladimir based on concerns that Boyd had abused him, and that thereafter in March, she left Vladimir in Boyd's care and on at least three occasions he had suffered injuries that medical personnel believed to be the result of abuse. This evidence was sufficient to adjudicate Vladimir to be under the jurisdiction of the juvenile court on either or both statutory bases. The court could find by the greater weight of the evidence that Vladimir was "in [a] situation dangerous to life or limb or injurious to [his] health" because on multiple occasions, he had suffered injuries consistent with abuse. The court could also find by the greater weight of the evidence that Vladimir "lack[ed] proper parental care by reason of the fault or habits of his parent" because Abigail had placed him in that situation by putting him in Boyd's care despite indications that Boyd had abused him.

The court addressed the Fifth Amendment issue in its order and stated that Abigail's testimony was generally consistent with the depositions of the doctor and the nurse, which depositions were admitted into evidence without objection prior to Abigail's testimony. We note that the testimony of the sheriff's deputy was also generally consistent with Abigail's testimony. The court's discussion of the Fifth Amendment issue in its order indicates that the court's decision was not dependent on the content of Abigail's testimony and that the court thought adjudication was supported by the other evidence. We agree that it was.

The court noted in its order that where Abigail's testimony differed from the testimony and depositions was whether Abigail had told the deputy in February 2018 that she would no longer leave Vladimir in Boyd's care and whether she suspected that the injuries in March 2018 were caused by Boyd. The deputy testified that she had said she would no longer

leave Vladimir in Boyd's care, and Abigail testified that she did not recall saying that. The nurse's notes attached to her deposition indicate that Abigail had made statements to the effect that she had concerns that Boyd had hurt Vladimir; Abigail testified that she believed Boyd's explanations for how the injuries occurred and that she did not believe the injuries were the result of abuse. To the extent Abigail's testimony varied from the other evidence, the court apparently found the other evidence more credible.

Abigail makes two specific arguments regarding sufficiency of the evidence. First, she argues that the court applied a "strict liability" standard by holding her responsible for anything that happened to Vladimir while he was in another person's care. Brief for appellant at 32. We do not read the court's order as finding that Abigail was "responsible" for the injuries in the sense that she directly caused them. To find that Vladimir was in a dangerous or injurious situation, it was not necessary to show a parent caused the injury, just that he was in a situation wherein he was at risk for such injury. And to find lack of proper parental care, it was also not necessary to show Abigail was responsible for the injury; instead, it was enough to show she had put him in the situation that placed him at risk.

Abigail also argues that it was unfair to base the adjudication in part on her testimony that at the time of the hearing, she was still in a relationship with Boyd. She argues she was not given notice that the continuing relationship would be a basis for the adjudication. However, we read the court's findings to be based on the circumstances that existed in February and March 2018 and that were alleged in the petition rather than on Abigail's continuing relationship with Boyd at the time of the hearing. We further determine that the evidence of circumstances that existed in February and March 2018 was sufficient to support the adjudication and that evidence of the continuing relationship was not necessary to the court's ruling.

## CONCLUSION

We conclude that Abigail could invoke her Fifth Amendment privilege in this juvenile adjudication and that she did so. We further conclude that even if the court erred in failing to determine that at least part of Abigail's testimony was incriminating and therefore protected by her invocation of her Fifth Amendment privilege, such error was not reversible error; Abigail did not suffer unfair prejudice, because there was sufficient evidence to support the adjudication without such testimony and because her Fifth Amendment rights were not violated in this civil proceeding. We further conclude that there was sufficient evidence to support the adjudication that Vladimir was a child within the meaning of § 43-247(3)(a). We therefore affirm the county court's order of adjudication.

AFFIRMED.

HEAVICAN, C.J., not participating.