STATE OF NEBRASKA, APPELLANT, V.
DWIGHT L. ROSSBACH, APPELLEE.

650 N.W.2d 242

Filed August 16, 2002.   No. S-00-1313.

Kay E. Tracy, of the Hall County Attorney's Office, for appellant.

Kirk E. Naylor, Jr., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

The State filed a complaint in the district court charging the appellee, Dwight L. Rossbach, with two counts of first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319(1)(b) (Reissue 1995). A preliminary hearing was held in the district court, and the court refused to bind Rossbach over for trial and dismissed the charges against him. The State initiated error proceedings, arguing that there was sufficient evidence adduced to bind Rossbach over for trial in the district court. We agree, and remand this cause to the district court for further proceedings in accordance with Neb. Rev. Stat. § 29-2316 (Reissue 1995).

## FACTUAL BACKGROUND

The State initially filed a complaint in the county court for Hall County, alleging that Rossbach committed first degree sexual assault against A.H. and L.N., pursuant to § 28-319(1)(b). Section 28-319(1) states that "[a]ny person who subjects another person to sexual penetration . . . (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree." The county court conducted a preliminary hearing and dismissed the initial complaint after finding that the evidence indicated that a crime had not been committed by the accused.

The State refiled an identical complaint directly in the district court, and the parties stipulated that a preliminary hearing could be conducted in the district court based upon the record of the proceedings held in the county court. At the district court preliminary hearing, the court received 12 exhibits, including transcribed testimony from six witnesses, including A.H. and L.N., previously offered at the county court hearing. Additionally, the parties stipulated regarding testimony that would be

given by a chemist employed by the Nebraska Department of Motor Vehicles.

The State alleges that on February 10, 2000, Rossbach sexually assaulted A.H. and L.N. at his home. At that time, A.H. and L.N. were 17 and 16 years old, respectively, and attended a small central Nebraska high school. Rossbach, at that time, was a 44-year-old Spanish language teacher at the same high school. Rossbach had L.N. as a student in a class during the 1999-2000 school year; A.H. was not then a student of Rossbach, but had been in the past. The testimony and the evidence from the preliminary hearing reveal the following: In December 1999, A.H. began e-mailing Rossbach after she and L.N. found his e-mail address in another teacher's classroom. A.H. testified that she and her friends composed an e-mail to Rossbach during lunchtime, and A.H. sent it to Rossbach on a dare from her friends. At some point prior to February 10, 2000, A.H. and L.N. showed Rossbach identical tattoos that they each had near the pelvis—a four-leaf clover with the saying "lucky you." The high school principal testified that prior to February 10, he received a warning from another high school teacher that A.H. had mentioned an attraction to both Rossbach and the principal, and A.H. expressed a desire to have sex with them.

The evidence also showed that A.H. had been hospitalized for alcohol poisoning in October 1999 and that she had spoken with Rossbach about it. Upon hearing this, Rossbach, according to A.H., told her that she "shouldn't drink so much." A.H. also testified that she has been taking Zoloft, an antidepressant medication, for approximately 2 years and had been on antidepressants since she was in fifth grade. A.H. mentioned her antidepressant medication to L.N. while at Rossbach's home on February 10, 2000, and A.H. thought that Rossbach probably heard the exchange.

In an e-mail to Rossbach dated February 9, 2000, A.H. wrote, "I know that you could lose your job . . . . But I know I want to do this. . . . I can hardly get my mind off of you, I undress you with my eyes just walking pass [sic] you in the hallway." A.H. testified that she wrote this e-mail in response to prior conversations with Rossbach in which he expressed a desire to have sex with A.H., but said he could lose his job if anyone found out. A.H. testified that although her flirtation with Rossbach might

have made it seem like she reciprocated his desire, she never actually told him that she wanted to have sex with him. Rossbach invited A.H. to his home during the week of February 10, e-mailed her directions to his home, and mentioned specifically that his wife would be out of town.

The evidence revealed that on the evening of February 10, 2000, A.H. and L.N. attended a party in Grand Island, Nebraska, where they each consumed alcoholic beverages. A.H. testified that she drank four bottles of "Two Dogs," an alcoholic beverage, and a "Reserves" wine cooler at the party and that before 9 p.m., was "buzzing" and "had a light head." L.N. testified that before they left the party at 8:30 p.m., she drank a "Reserves" wine cooler and two bottles of "Two Dogs" alcoholic beverage and felt "too drunk to drive." L.N. testified that she and A.H. had not previously agreed to go to Rossbach's home, but decided to go once they were in the car after the party. A.H. had brought the written directions to Rossbach's home and had left them in L.N.'s car. A.H. drove L.N.'s car to Rossbach's home, approximately 20 miles away from the party in Grand Island.

Upon arriving at Rossbach's home, A.H. and L.N. entered without knocking. A.H. and L.N. found Rossbach in his kitchen, where he gave them tequila and beer. L.N. stated that Rossbach was not drinking alcohol, but "some kind of pop." Rossbach knew that A.H. and L.N. had been drinking, as A.H. brought a bottle of "Reserves" with her into Rossbach's home and he tasted it. A.H., when asked how she physically felt while at Rossbach's home, testified that she felt dizzy, had trouble walking, talked fast, slurred her speech, and laughed a lot. L.N. testified that she felt sick but was laughing and did not feel like she was going to pass out.

Rossbach told the high school principal that after talking with A.H. and L.N., he went into the bathroom adjacent to his bedroom. Upon exiting the bathroom, Rossbach found A.H. and L.N. in his bed. L.N. stated that Rossbach had removed some of her clothing before he entered the bathroom; while he was in the bathroom, A.H. suggested that L.N. should remove the rest of her clothes. L.N. testified that she removed her shirt at A.H.'s suggestion, although she did not want to. A.H. and L.N. both testified that though they did not intend to have sex with Rossbach when

going to his home, Rossbach sexually penetrated both of them. A.H. and L.N. remembered having sex with Rossbach. L.N. testified that she does not remember driving herself back from Rossbach's home, because she was feeling "spaced out."

A.H. testified that she had sex with Rossbach willingly and e-mailed him again after February 10, 2000. On February 14, A.H. e-mailed Rossbach:

I dont know Senor, I havent been able to stop thinking about you and everything else. Every time I turn around there you are . . . I have a feeling that I'm gonna fall and that I'm gonna fall hard. I have all these wierd [sic] feelings and thoughts and I just dont know what to do. I get jealous when I see other women in school talking to you. Its stupid, I know, but I do. I want it all, but its all so hard. I just dont know. What do you think?? So when am I gonna get to play again??

Your little "TOY"

me

In an e-mail to Rossbach dated February 16, 2000, A.H. wrote:

[W]hen ever [sic] you want to have a little fun, you know how to get ahold of me. And like we discussed, it will only be the two of us. . . . But like I said, dont worry about [L.N.] She just wishes that she never would of done it and shes starting to forget about it. I'm the one whos waiting for more of it.

Again, A.H. signed the e-mail "Your little Toy."

At the preliminary hearing, the State also offered the testimony of Dr. Susan Howard, an expert qualified in adolescent medicine and psychiatry. Howard opined that A.H. and L.N. were mentally or physically incapable of resisting or appraising the nature of their conduct when they had sex with Rossbach. She based this opinion on a reading of the police records, her knowledge of child development, psychiatric issues, and her medical knowledge of the effects of alcohol on judgment and decisionmaking ability. It was Howard's opinion that A.H. and L.N. were incapable of resisting or appraising the nature of their conduct because of (1) A.H.'s and L.N.'s relative ages and stages of development, (2) their level of alcohol consumption, and (3) the imbalance of authority inherent in the student-teacher relationship.

The parties also stipulated at the preliminary hearing that were the State's chemist called to testify, he would opine that A.H.'s blood alcohol content ranged from .310 to .370 at 9 p.m. on February 10, 2000, and that her blood alcohol content increased to a range of .317 to .430, and possibly as high as .500 (depending on the alcohol consumed) at the time of the alleged assault around midnight. Though the stipulation is not specific on the basis of the measurement, it appears from the record that the court and the parties understood the measurement of the alcohol content to be grams of alcohol per 100 milliliters of blood, or its equivalent. The chemist, if called, would have also testified that L.N.'s blood alcohol content ranged from .126 to .186 at 9 p.m. on February 10 and that the range increased up to .202, "with an average" of .149 or .170 (depending on the alcohol consumed) at the time of the alleged assault around midnight. The chemist formed these opinions from a hypothetical based on A.H.'s and L.N.'s self-reporting with respect to the amount of alcohol consumed and the time of consumption, and their respective body weights. Rossbach did not stipulate that the amounts of consumption utilized by the chemist in answering the hypothetical question were, in fact, the amounts consumed by A.H. and L.N. The court accepted the parties' stipulation regarding the offer of testimony by the State's chemist.

The district court determined in its order of dismissal that the State did not show that a crime, as defined by § 28-319(1)(b), had been committed. The court stated in its order that "[t]hese alleged victims . . . were capable of resisting arranging [sic] this sexual encounter and were capable of appraising the nature of their conduct . . . ." Further, the district court, without assessing the culpability of Rossbach, reasoned that

> the alleged victims consumed the vast majority of the alcohol voluntarily and had the capacity to make a decision to travel in a car in excess of 20 miles, engage in the sexual relationship, discuss the ramifications of the relationship, and . . . the capacity to continue to try to foster the relationship.

Thus, the court, at the preliminary hearing stage, dismissed the two counts of first degree sexual assault against Rossbach. The State takes exception to the judgment of the district court

pursuant to the error proceedings set forth in Neb. Rev. Stat. § 29-2315.01 (Reissue 1995).

## ASSIGNMENT OF ERROR

The State assigns that the district court erred in dismissing the charges at the preliminary hearing rather than binding Rossbach over to stand trial on two counts of first degree sexual assault, pursuant to § 28-319(1)(b).

## STANDARD OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Haltom*, 263 Neb. 767, 642 N.W.2d 807 (2002).

## ANALYSIS

■ We have long recognized that a preliminary hearing did not exist at common law. A preliminary hearing is a creature of statute, and its functional purpose is stated in Neb. Rev. Stat. § 29-506 (Reissue 1995). A preliminary hearing before a magistrate is not a criminal prosecution or trial within the meaning of the Nebraska Constitution. *Delay v. Brainard*, 182 Neb. 509, 156 N.W.2d 14 (1968). See *State v. O'Kelly*, 175 Neb. 798, 124 N.W.2d 211 (1963).

■ A preliminary hearing is not a trial of the person charged in regard to his or her guilt or innocence. See, *Delay, supra*; *State v. Sheldon*, 179 Neb. 377, 138 N.W.2d 428 (1965). Instead, the purpose of a preliminary hearing is to ascertain whether or not a crime has been committed and whether there is probable cause to believe the accused committed it. See, *State v. Wilkinson*, 219 Neb. 685, 365 N.W.2d 478 (1985); *State v. Ruzicka*, 218 Neb. 594, 357 N.W.2d 457 (1984); *State v. Howard*, 184 Neb. 274, 167 N.W.2d 80 (1969); *Delay, supra*; *Fugate v. Ronin*, 167 Neb. 70, 91 N.W.2d 240 (1958). The effect of the foregoing, if found to exist, is to hold the accused for trial in district court, which has jurisdiction to try the accused. *Delay, supra*. See *Fugate, supra*.

■ Thus, the question before us is not whether the State proved the accused guilty beyond a reasonable doubt, but, rather, whether the State had adduced enough evidence, if believed by a trier of fact, that would show that a first degree sexual assault had been

perpetrated and that there is probable cause to believe the accused committed the act(s). Evidence that would justify a committing magistrate in finding that probable cause existed for the detention of a defendant need not necessarily be sufficient to sustain a verdict of guilty when he or she is placed on trial. See, *Delay, supra*; *Neudeck v. Buettow*, 166 Neb. 649, 90 N.W.2d 254 (1958).

The rule that the accused is entitled to the benefit of a reasonable doubt does not apply in *preliminary* examinations. *Delay, supra.* The test is not whether guilt is established beyond a reasonable doubt, but, rather, whether evidence is adduced that shows a crime was committed and that there is probable cause to believe that the accused committed the crime. See, *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000); *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982). Any alteration to this rule, when we require prompt preliminary hearings, would tend to make the preliminary hearing a trial and could seriously impede the flow of criminal prosecutions. See *Delay, supra.*

The issue on appeal, therefore, is whether the State had adduced sufficient evidence at the preliminary hearing to bind Rossbach over for trial on two counts of first degree sexual assault. In other words, assuming the evidence to be true, see *Delay, supra*, is there evidence worthy of consideration that would tend to show that the crime of first degree sexual assault was committed in the present case? There was no dispute at the preliminary hearing stage that Rossbach was the individual who engaged in the charged conduct.

The real issue that troubled the district court, and that we now confront, is whether alleged victims of sexual assault can voluntarily intoxicate themselves so as to render themselves "physically incapable of resisting or appraising the nature of [their] conduct" under § 28-319(1)(b). Nebraska's sexual assault statutory scheme provides the answer.

There are three distinct ways in which a perpetrator can commit the offense of first degree sexual assault under § 28-319(1). In addition to compelled or coerced sexual penetration pursuant to § 28-319(1)(a), a perpetrator 19 years or older may commit first degree sexual assault by subjecting a victim that is less than 16 years of age to sexual penetration. See § 28-319(1)(c). Furthermore, Nebraska's first degree sexual assault law prohibits,

without qualification, a perpetrator from sexually penetrating a victim that the attacker knows or should have known is "mentally or physically incapable of resisting or appraising the nature of his or her conduct." § 28-319(1)(b). Nothing in the plain language or legislative history of § 28-319(1)(b) limits or qualifies the "incapable of resisting or appraising the nature of his or her conduct" phrase—a fact significant to our analysis.

Common-law authorities treated intercourse with an unconscious woman as rape and occasionally expanded this rule to cases where the female was not technically unconscious but was so incapacitated by alcohol or drugs as to be in a condition of utter insensibility or stupefaction. See, e.g., *Hirdes v. Ottawa Circuit Judge*, 180 Mich. 321, 146 N.W. 646 (1914); *Commonwealth v. Burke*, 105 Mass. 376 (1870); *State v. Stoyell*, 54 Me. 24 (1866); A.L.I., Model Penal Code and Commentaries § 213.1, comment 1 (1980). Most current statutes, however, differentiate unconsciousness from lesser impairment and require in the latter case that the drug or intoxicant be administered by or with the privity of the defendant in order to constitute the highest degree of forcible rape. See, e.g., Cal. Penal Code § 261(a)(3) (West 1999); Idaho Code § 18-6101(4) (Michie Cum. Supp. 2002); La. Rev. Stat. Ann. § 14:43A(1) (West 1997); N.H. Rev. Stat. Ann. § 632-A:2I(f) (Cum. Supp. 2001); N.D. Cent. Code § 12.1-20-03(1)b (1997); Ohio Rev. Code Ann. § 2907.02(A)(1)(a) (Anderson 1999); A.L.I., Model Penal Code and Commentaries, *supra*, comment 5.

The principal modern deviation from this view is the New York statute, under which the incapacitating substance must be administered without the consent of the victim, and the defendant has an affirmative defense if he did not know of the facts or conditions giving rise to the victim's incapacity to consent. N.Y. Penal Law § 130.10 (McKinney 1998). If the defendant did have such knowledge, however, New York declares him guilty of a lesser offense of rape without requiring that the defendant act with the purpose of preventing resistance or even that he administer the substance in question. *Id.*; N.Y. Penal Law §§ 130.00(6) and 130.25(1) (McKinney 1998). Many states require that the intoxicant be given without the victim's consent. See, e.g., Ala. Code § 13A-6-60(6) (1994); Colo. Rev. Stat. Ann. § 18-3-402(1)(d) (West 1999); Ky. Rev. Stat. Ann. § 510.010(5) (Michie 1999).

Nebraska, however, is among a handful of states that substantially codifies the common-law view. In these states, the statute requires that the victim be under the influence of an intoxicant or be mentally or physically incapacitated, but does not require that the defendant administer the intoxicant or that the victim be given the intoxicant without consent. See § 28-319(1)(b). See, also, Ariz. Rev. Stat. Ann. § 13-1401(5)(b) (West 2001); Iowa Code Ann. § 709.1(1) (West Cum. Supp. 2002); Kan. Stat. Ann. § 21-3502(a)(1)(C) (Cum. Supp. 2001); Mont. Code Ann. § 45-2-101(40) (1999). Nebraska and these other states grade the offense at the same level as forcible rape.

■ No qualification or lesser offense exists with regard to voluntary intoxication in Nebraska. Plain and simple, any person who subjects another person to sexual penetration, who knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature of his or her conduct, is guilty of first degree sexual assault. § 28-319(1)(b). The victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct. See, *State v. Collins*, 7 Neb. App. 187, 583 N.W.2d 341 (1998); *In re Interest of J.M.*, 223 Neb. 609, 391 N.W.2d 146 (1986). Under § 28-319(1)(b), the two-part analysis requires a significant abnormality, such as severe intoxication or other substantial mental or physical impairment, on the part of the alleged victim, and knowledge of the abnormality on the part of the alleged attacker. See *Collins, supra.*

With that in mind, we apply the plain language of § 28-319(1)(b) to the present facts to determine whether there was sufficient evidence (assuming the evidence to be true) that would tend to show that a crime had been committed such as to bind Rossbach over for trial in the district court. As noted earlier, § 28-319(1) provides that "[a]ny person who subjects another person to sexual penetration . . . (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree."

As we view the record for purposes of a preliminary hearing, the State has adduced sufficient evidence, if proved beyond a reasonable doubt at trial and believed by a trier of fact, of acts

that would constitute the crime of first degree sexual assault as defined by § 28-319(1)(b). Without repeating in detail the facts set forth earlier in the opinion, we note that the evidence revealed, at a minimum, significant mental or physical abnormality on the part of both A.H. and L.N. in the hour(s) prior to the alleged sexual assault. A.H. had a blood alcohol content that potentially ranged from .370 at 9 p.m. on February 10, 2000, to .430, or higher, at or around the time of the alleged sexual assault. L.N. had a blood alcohol content that potentially ranged from .186 at 9 p.m. on February 10 up to .202, at or around the time of the alleged sexual assault. Howard testified, inter alia, that because of both women's ages and stages of development, along with the high level of alcohol consumption, A.H. and L.N. were incapable of resisting Rossbach or appraising the nature of their conduct.

Further, evidence was adduced indicating that Rossbach knew or should have known of the significant mental or physical abnormalities of both women on the evening of February 10, 2000. In addition to the high blood alcohol contents of both women, the evidence showed that the women felt dizzy, had trouble walking, and slurred their speech. Rossbach gave A.H. and L.N. more alcohol after they arrived at his home, prior to the alleged assaults. The fact that A.H. and L.N. had voluntarily consumed substantial amounts of alcohol earlier in the evening does not lessen the culpability of Rossbach. There was no dispute at the preliminary hearing that Rossbach subjected both A.H. and L.N. to sexual penetration during the evening of February 10.

Given the facts presented at the preliminary hearing, including the expert testimony of Howard and the State's chemist (which may be contested at trial but was undisputed at the preliminary hearing), we conclude that the State has adduced enough evidence at this stage of the proceedings to show that the crime(s) were committed and probable cause to believe that Rossbach committed the crime(s). We determine as a matter of law that the State has adduced enough evidence at the preliminary hearing to bind Rossbach over to stand trial on two counts of first degree sexual assault in the district court. Ultimately, of course, under our statutory and constitutional system, it will be a trier of fact

that will determine whether the State has proved beyond a reasonable doubt that Rossbach subjected A.H. and L.N. to sexual penetration at a time when they were mentally or physically incapable of resisting or appraising the nature of their conduct.

### CONCLUSION

For the foregoing reasons, we sustain the exception taken by the State, pursuant to § 29-2315.01. Because jeopardy did not attach at the preliminary hearing, we remand the cause to the district court for further proceedings consistent with this opinion and in accordance with § 29-2316.

EXCEPTION SUSTAINED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.

HENDRY, C.J., not participating.