Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/02/2021 08:33 AM CST

In re Interest of Gabriel P., a child
under 18 years of age.
State of Nebraska, appellee, v.
Gabriel P., appellant.

___ N.W.2d ___

Filed January 26, 2021.    No. A-20-180.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.
2. **Juvenile Courts: Criminal Law: Appeal and Error.** Although an adjudication is not a criminal proceeding, an appellate court takes guidance from the criminal laws of Nebraska.
3. **Juvenile Courts: Criminal Law.** Adjudication under Neb. Rev. Stat. § 43-247(1), (2), (3)(b), and (4) (Reissue 2016) is akin to cases brought under the Nebraska Criminal Code or other statutes specifying criminal offenses.
4. **Appeal and Error.** For an alleged error to be considered by an appellate court, an appellant must both assign and specifically argue an alleged error.
5. **Sexual Assault.** Nebraska's first degree sexual assault law prohibits, without qualification, a perpetrator from sexually penetrating a victim that the attacker knows or should have known is mentally or physically incapable of resisting or appraising the nature of his or her conduct.
6. ____. Nothing in the plain language or legislative history of Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016) limits or qualifies the "incapable of resisting or appraising the nature of his or her conduct" phrase.
7. ____. The victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct.

- 432 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

8. ____. Under Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016), the two-part analysis requires a significant abnormality, such as severe intoxication or other substantial mental or physical impairment, on the part of the alleged victim, and knowledge of the abnormality on the part of the alleged attacker.

9. **Circumstantial Evidence: Proof.** Circumstantial evidence is not inherently less probative than direct evidence and a fact proved by circumstantial evidence is nonetheless a proven fact.

10. **Circumstantial Evidence: Words and Phrases.** Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists.

11. **Trial: Evidence: Appeal and Error.** On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered to the trier of fact.

12. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.

13. ____. In the absence of plain error, where an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

Appeal from the County Court for Scotts Bluff County: Kris D. Mickey, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

Danielle Larson, Deputy Scotts Bluff County Attorney, for appellee.

Pirtle, Chief Judge, and Moore and Riedmann, Judges.

Pirtle, Chief Judge.

### INTRODUCTION

Gabriel P. appeals from an order of the Scotts Bluff County Court, sitting as a juvenile court, adjudicating him as being a juvenile within the meaning of Neb. Rev. Stat. § 43-247(1) and (2) (Reissue 2016) after finding he had committed the offenses of minor in possession of alcohol and first degree sexual assault. Based on the reasons that follow, we affirm.

## BACKGROUND

The State filed a petition alleging Gabriel was (1) a child within the meaning of § 43-247(1), because he was a minor 18 years of age or younger who had unlawfully consumed or possessed alcoholic liquor, and (2) a child within the meaning of § 43-247(2), because he committed first degree sexual assault. Gabriel was 16 years old at the time of the offenses. The victim of the sexual assault, B.B., was also 16 years old.

An adjudication hearing was held on the State's petition. Tina S., B.B.'s mother, was the first witness to testify. She testified that around 7:30 or 8 a.m. on August 20, 2019, she knocked on B.B.'s bedroom door and got no response. The door was locked, but she "picked the door lock." She then entered B.B.'s bedroom and observed B.B. and a male individual both lying on B.B.'s bed. She later identified the male as Gabriel, a friend of B.B.'s. Tina told Gabriel to get out of her house, and at first, he did not react. She had to repeat herself three or four times before he woke up. She testified that when he got up, he was "out of it."

Tina testified that B.B. was covered with a comforter and was lying on her back with her legs bent and her knees up. After waking up Gabriel, she went over to B.B., said her name, and shook her knee. B.B. did not respond. Tina then shook her daughter on the chest and still there was no response. Tina then called the 911 emergency dispatch service, and B.B. was taken to the hospital by ambulance.

Tina further testified that B.B.'s prescription medication for "[m]ood disorder, depression, and anxiety" was strewn all over the floor. She also saw an empty bottle of whiskey. Before the first responders arrived, Tina moved the comforter covering B.B. and saw that she was naked from the waist down and was bleeding from her vagina. Tina testified that she knew B.B. was not bleeding from her period, because the form of birth control B.B. used prevented her from having periods.

In regard to B.B.'s prescription medication, Tina testified that it was a struggle to get B.B. to consistently take her

- 434 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

medication. She indicated that B.B had a pattern of taking it for a few weeks and then not taking it. Tina testified that B.B. was taking her medication at the time of the incident. However, on cross-examination, she testified that she did not think B.B. was taking all of her medications at the time of the incident, but was taking one for anxiety.

Tori Towne, a nurse, testified that she performed a sexual assault nurse examination (SANE) on B.B. at the hospital. A SANE is an examination performed on individuals alleging they have been sexually assaulted. It involves a physical inspection of the victim's body, the victim's description about what happened, and then an internal examination. Towne testified that B.B.'s SANE did not take place until around 2 p.m., even though she was admitted to the hospital in the morning, because of B.B.'s intoxication. At the time B.B. was admitted to the hospital, her blood alcohol content was .19.

The State's counsel asked Towne what B.B. told her happened during the time she was with Gabriel. Gabriel's counsel objected based on hearsay. The State responded that it qualified under Neb. Rev. Stat. § 27-803(3) (Reissue 2016), the hearsay exception for medical treatment. The court asked Gabriel's counsel if he had any further response, and he stated that he did not. The objection was overruled.

Towne then testified about what B.B. told her happened prior to the assault. B.B. said that Gabriel had come over in the middle of the night, around 3 a.m., and that they drank a bottle of whiskey together. The last thing she remembered was that they had been drinking, they were kissing and lying on the bed together, he had his head on her chest, and they were listening to music. B.B. did not know if any sexual penetration had occurred.

During the physical examination, Towne noted bleeding in the vaginal canal, indicating that "something [had] been inserted." B.B. also had several suction injuries, or "hickeys," on her chest and neck. On cross-examination, Towne testified that B.B. told her she took pills earlier in the evening, before

Gabriel came over. Towne was not asked if B.B. told her what type of pills or how many she took.

Sgt. Dominick Peterson with the Scottsbluff Police Department testified that he was dispatched to B.B.'s home around 7:30 or 8 a.m. on August 20, 2019. When he made contact with B.B., she appeared lethargic and disoriented. Gabriel was still present in the bedroom, and Peterson noticed that he had dried blood on his fingers. Peterson asked Gabriel what his relationship was with B.B., and he said, "I fuck with her and I love her, but I can't trust her. She plays too much games." Gabriel was asked how he got to B.B.'s home, and he stated that B.B. picked him up around 1 a.m. Gabriel first told Peterson that he was drinking at B.B.'s house, but then he retracted that statement and said he was not drinking, but that B.B. was drinking. Peterson asked Gabriel to submit to a preliminary breath test, which he agreed to do, and the result was .05.

Peterson was later briefly recalled as a witness and testified that Gabriel told him he did not have sex with B.B. because he was too drunk, but that Gabriel then recanted and said that he had not been drinking.

The investigator who photographed the scene and gathered evidence from B.B.'s bedroom testified that he collected a prescription bottle of hydroxyzine, a vaping device, and two empty 750 milliliter bottles of whiskey.

Investigator Brandi Brunz testified that Peterson requested her assistance in the case and that she went to the hospital to meet B.B. Brunz testified that she could tell B.B. was under the influence of something, but she did not know what. She also observed some bruising on B.B.'s neck and dried blood on her hand. Brunz was present in the room when the SANE was performed. She observed the suction injuries as well as various other bruises. She also saw small tears and swelling during the vaginal examination.

Brunz also interviewed Gabriel on August 21, 2019, and he explained how he and B.B. ended up together in her

- 436 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

bedroom. He stated that initially he and B.B. were "messaging" each other on "Snapchat" and Gabriel asked B.B. to get him a bottle of alcohol. B.B. obtained a bottle, took it to Gabriel, and left. B.B. and Gabriel continued communicating on Snapchat and eventually agreed to meet. Around 1 a.m., they both walked to an agreed-upon location and walked back to B.B.'s house together. When they got to the house, they "snuck in [B.B.'s] bedroom window." Gabriel told Brunz that their plan was to drink alcohol together and that B.B. told him she wanted to get drunk.

Gabriel told Brunz that he sexually penetrated B.B. and performed oral sex on her. Gabriel also told Brunz that he saw blood after they had sex but he thought maybe B.B. was having her period. Brunz asked Gabriel if B.B. said anything while they were having sex, and he said that she did not say anything. When Brunz asked Gabriel about B.B.'s level of intoxication, he stated that "she was going wild and does that when she's drunk." He also said that B.B. was throwing pills everywhere and that when he asked her what she was doing, she said she did not know. Brunz noted in her report that Gabriel told her that he and B.B. had never had sex before the incident at issue.

On cross-examination, Brunz acknowledged that in her report she stated that Gabriel told her that he and B.B. started kissing and then she told him to "fuck [her] and come inside [her]."

Following the hearing, the court found that the State had met its burden beyond a reasonable doubt as to both counts and adjudicated Gabriel as a juvenile within the meaning of § 43-247(1) and (2).

## ASSIGNMENTS OF ERROR

Gabriel assigns that the juvenile court erred in (1) finding that the State proved its case beyond a reasonable doubt and (2) violating his right to confrontation.

- 437 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Vladimir G.*, 306 Neb. 127, 944 N.W.2d 309 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Sufficiency of Evidence.*

[2,3] Gabriel first assigns that the juvenile court erred in finding that the State proved its case beyond a reasonable doubt. When an adjudication is based upon § 43-247(1), (2), (3)(b), or (4), the allegations must be proved beyond a reasonable doubt. Neb. Rev. Stat. § 43-279(2) (Reissue 2016). Although an adjudication is not a criminal proceeding, we take guidance from the criminal laws of this state. *In re Interest of Adrian B.*, 11 Neb. App. 656, 658 N.W.2d 722 (2003). See, also, *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986) (adjudication under § 43-247(1), (2), (3)(b), and (4) is akin to cases brought under Nebraska Criminal Code or other statutes specifying criminal offenses).

[4] Gabriel argues only that the State did not present sufficient evidence to prove that he committed sexual assault in the first degree. He does not make an insufficiency argument in regard to the minor in possession charge or the resulting adjudication based on § 43-247(1). Accordingly, we do not address it. See *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016) (for alleged error to be considered by appellate court, appellant must both assign and specifically argue alleged error).

In regard to the first degree sexual assault allegation, Neb. Rev. Stat. § 28-319(1) (Reissue 2016) provides, in relevant part:

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, [or]

- 438 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

(b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree.

During closing arguments, the State admitted that it did not prove § 28-319(1)(a) beyond a reasonable doubt and that it was proceeding based only on § 28-319(1)(b). Accordingly, the State had to prove beyond a reasonable doubt that Gabriel subjected B.B. to sexual penetration and that Gabriel knew or should have known that B.B. was mentally or physically incapable of resisting or appraising the nature of her conduct. Gabriel argues that the State failed to sufficiently prove these elements. We disagree.

First, there is evidence beyond a reasonable doubt that penetration occurred in this case. Gabriel admitted to Brunz that he and B.B. had sexual intercourse and that he performed oral sex on her. Both of these acts meet the statutory definition of "[s]exual penetration." See Neb. Rev. Stat. § 28-318(6) (Reissue 2016). In addition, Towne noted bleeding in the vaginal canal during the physical examination of B.B., indicating she had been vaginally penetrated.

[5,6] Second, the State proved the issue of capacity beyond a reasonable doubt. Nebraska's first degree sexual assault law prohibits, without qualification, a perpetrator from sexually penetrating a victim that the attacker knows or should have known is "mentally or physically incapable of resisting or appraising the nature of his or her conduct." § 28-319(1)(b). See *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002). Nothing in the plain language or legislative history of § 28-319(1)(b) limits or qualifies the "incapable of resisting or appraising the nature of his or her conduct" phrase. *State v. Rossbach, supra*.

[7,8] Plain and simple, any person who subjects another person to sexual penetration, who knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature of his or her conduct, is guilty of

- 439 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

first degree sexual assault. § 28-319(1)(b); *State v. Rossbach, supra*. The victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct. *State v. Rossbach, supra*. Under § 28-319(1)(b), the two-part analysis requires a significant abnormality, such as severe intoxication or other substantial mental or physical impairment, on the part of the alleged victim, and knowledge of the abnormality on the part of the alleged attacker. *State v. Rossbach, supra*.

In the present case, there was evidence of a significant abnormality in that B.B. was severely intoxicated. When B.B.'s mother entered B.B.'s bedroom in the morning on August 20, 2019, she was unresponsive and her mother could not wake her up. She was lying on her back with her legs bent and her knees up, naked from the waist down, and bleeding from her vagina. When B.B. arrived at the hospital, her blood alcohol content was .19. For reference, it is illegal to operate a motor vehicle when a person has a concentration of .08 of 1 gram or more by weight of alcohol per 100 milliliters of his or her blood. See Neb. Rev. Stat. § 60-6,196(1)(b) (Reissue 2010). She had been drinking whiskey, and the evidence shows such consumption occurred sometime after 1 a.m.—possibly as late as 3 a.m.—and Tina found B.B. unresponsive around 7:30 or 8 a.m. B.B.'s SANE had to be delayed until the afternoon due to B.B.'s intoxication at the time she was admited to the hospital. B.B. remembered drinking the whiskey, and the last thing she remembered was that she and Gabriel were kissing and lying on the bed together, he had his head on her chest, and they were listening to music. She did not remember having sex.

The evidence also supports a finding that Gabriel knew that B.B. was intoxicated. He and B.B. were drinking together, and B.B. told him she wanted to get drunk. Gabriel tested positive for alcohol, but his level of intoxication was .05, compared to B.B.'s level of .19. There was also evidence Gabriel knew that B.B. was drunk, because he told Brunz that "she was

- 440 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

going wild and does that when she's drunk." Gabriel also told Brunz that when B.B. was throwing pills all over the room, she said she did not know what she was doing.

[9,10] The evidence that Gabriel knew or should have known that B.B. was "mentally or physically incapable of resisting or appraising the nature of his or her conduct" was primarily circumstantial. See § 28-319(1)(b). However, circumstantial evidence is not inherently less probative than direct evidence and a fact proved by circumstantial evidence is nonetheless a proven fact. See *State v. Ross*, 283 Neb. 742, 811 N.W.2d 298 (2012) (superseded by statute on other grounds as stated in *State v. Sanders*, 289 Neb. 335, 855 N.W.2d 350 (2014)). Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists. *Id*.

We conclude there was sufficient evidence for the juvenile court to find beyond a reasonable doubt that Gabriel committed first degree sexual assault and was a juvenile within § 43-247(2).

*Violation of Confrontation Clause.*

Gabriel also assigns that the admission of Towne's testimony about statements made by B.B. violated his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and article 1, § 11, of the Nebraska Constitution. At trial, Towne was asked what B.B. told her about what happened while she was with Gabriel. Gabriel's counsel objected based on hearsay. The State responded that B.B.'s statements fell under § 27-803(3), the hearsay objection for medical treatment. The court asked Gabriel's counsel if he had any further response, and he stated that he did not. The objection was overruled. Towne then testified about statements B.B. made to her.

[11-13] Gabriel now argues that Towne's testimony violated his right to confrontation. However, Gabriel did not raise a Confrontation Clause objection at trial. On appeal, a

- 441 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GABRIEL P.
Cite as 29 Neb. App. 431

defendant may not assert a different ground for his objection to the admission of evidence than was offered to the trier of fact. *State v. Trice*, 292 Neb. 482, 874 N.W.2d 286 (2016). An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *Id.* In the absence of plain error, where an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.*

Gabriel is asserting a different objection to Towne's testimony than he did at trial, and therefore, he has not preserved it for appellate review. We find no plain error in the trial court's ruling concerning the admission of Towne's testimony. See *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004) (admission of emergency room doctor's testimony regarding victim's statement when asked what happened to her did not violate Confrontation Clause). Accordingly, we reject Gabriel's Confrontation Clause argument without further discussion.

## CONCLUSION

Based upon our de novo review, we conclude that the State presented sufficient evidence to support the adjudication. Accordingly, the order of the juvenile court is affirmed.

AFFIRMED.