IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WATSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

WALTRIVELISH J. WATSON, APPELLANT.

Filed September 16, 2025.    No. A-25-102.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Kristi Egger, Lancaster County Public Defender, and John C. Jorgensen for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Pursuant to a plea agreement, Waltrivelish J. Watson entered a no contest plea in the Lancaster County District Court to possession of a firearm with a Class ID felony drug violation. The district court sentenced him to 25 to 45 years' imprisonment. On appeal, Watson asserts the court abused its discretion by imposing an excessive sentence and his trial counsel was ineffective in various ways. We affirm.

## II. BACKGROUND

On September 28, 2023, the State filed a five count complaint in the county court for Lancaster County charging Watson with two counts of "Possess Firearm with FEL 1B/1C Drug Violation," Class IB felonies; two counts of possession of a firearm by a prohibited person, Class ID felonies; and one count of "Possession of Money to be used Violating [Neb. Rev. Stat. §] 28-416(1)," a Class IV felony. After consulting with trial counsel, Watson filed a written waiver

- 1 -

of a preliminary hearing, and the case was bound over to the district court where an information with identical counts was filed by the State.

On November 18, 2024, pursuant to a plea agreement, the State filed an amended information charging Watson with a single count of "Possess Firearm with FEL 1D Drug Violation," a Class IC felony. At a hearing that same day, Watson entered a plea of no contest to the single count set forth in the amended information. In exchange for Watson's plea and the forfeiture of certain monies, the State agreed to dismiss and not refile the remaining charges contained in the original information. The district court advised Watson of the various constitutional rights he would be waiving by entering a no contest plea, and he affirmed his understanding.

According to the State's factual basis, on September 27, 2023, investigators at the Lancaster County Narcotics Task Force, while following up on an overdose investigation, were alerted that Watson was planning to provide cocaine to an individual at a retail store in Lincoln, Nebraska. Investigators knew where Watson worked and followed him from his workplace to his residence. Investigators believed Watson was retrieving the cocaine from his residence. After making a brief stop at his residence, Watson drove to the retail store and parked his vehicle. Investigators then contacted Watson, ordered him out of his vehicle, and asked him "where it was." In response, Watson directed investigators to his right front pants pocket where a plastic baggie containing 5.7 grams of suspected cocaine was located; it later pre-tested positive for cocaine. A search of Watson's vehicle also yielded $823.

Watson was transported to the Lincoln Police Department headquarters. He waived his *Miranda* rights and participated in an interview. Watson stated that he intended to deliver the cocaine found in his pocket to another individual. He also stated that he had more cocaine, marijuana, and firearms at his residence. A search warrant was executed at Watson's residence. During the search, investigators located six additional bags of suspected cocaine weighing approximately 5.7 grams each, 253 grams of marijuana, two firearms, and an additional $844. The suspected cocaine was submitted to the Nebraska State Patrol Crime Laboratory, where it was confirmed to be cocaine, and to have a total weight of more than 10 grams.

The district court accepted Watson's plea, finding it to be freely, voluntarily, knowingly, and intelligently entered. The court then found him guilty of the single count in the amended information.

On January 28, 2025, Watson was sentenced to 25 to 45 years' imprisonment, including a 5-year mandatory minimum. He was given credit for 64 days served.

Watson appeals.

## III. ASSIGNMENTS OF ERROR

Watson assigns that the district court abused its discretion by imposing an excessive sentence. Watson also assigns, restated and consolidated, that his trial counsel was ineffective for (1) advising him to waive his preliminary hearing; (2) failing to advise him of his right to independent testing of the controlled substances; (3) advising him to waive his rights to a speedy trial and jury trial; (4) failing to file a motion to suppress the arrest; (5) failing to adequately investigate the connection between his drug dealing and the overdose that led to his arrest; and (6) failing to advise him of a defense based on the unconstitutionality of a statute.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, or evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Watson first claims the district court abused its discretion by imposing an excessive sentence.

Watson was sentenced to 25 to 45 years' imprisonment for "Possess Firearm with FEL 1D Drug Violation," a Class IC felony. A Class IC felony is punishable by a mandatory minimum of 5 years' imprisonment and up to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Watson's sentence is within the statutory limits. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Rivera-Meister, supra*.

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

Watson's presentence investigation report (PSR) reveals the following information. He was 35 years old at the time of sentencing, had two dependent children, was a high school graduate with some community college education, and was employed. Watson reported no childhood trauma or abuse and stated he had close relationships with his mother and some of his half-siblings. He admitted to previously selling marijuana and cocaine to cover his mother's medical bills because he did not want her to "lose everything." During the presentence investigation interview, Watson indicated he had never struggled with a substance abuse problem. However, according to a police report contained in the PSR, Watson told investigators that he "smokes marijuana every day" and uses cocaine "3 to 8 times in social settings and 1 to 3 times a day when he's not with people."

Watson's criminal history dates back to 2007. His convictions include making false statements to police (three times; fined, community service); possession of marijuana (eight times; fined, 1 day of jail, community service); possession of drug paraphernalia (three times; fined); attempted delivery of or possession with intent to deliver a controlled substance (intensive supervised probation, probation revoked, 270 days' jail); child enticement (2 to 5 years' imprisonment); motor vehicle homicide with reckless or willful reckless driving (24 months' imprisonment and 18 months' post-release supervision); and a myriad of traffic related offenses. Watson has been a registered sex offender since 2015. The PSR noted that "[h]is ongoing involvement in criminal activities, despite the consequences, reflects a general disregard for the laws and an attitude that is supportive of crime."

As part of the presentence investigation, a "Level of Service/Case Management Inventory" (LS/CMI) was conducted, and Watson was assessed at an overall "[h]igh" risk to reoffend. He scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domains for family/marital and companions. He scored in the "[h]igh" risk range in the domain for criminal history. He scored in the "[m]edium" risk range in the domains for leisure/recreation, alcohol/drug problems, and antisocial pattern. He scored in the "[l]ow" risk range in the domain for procriminal attitude. And he scored in the "[v]ery [l]ow" risk range in the domain for education/employment.

At the sentencing hearing, Watson's counsel, having previously provided a written letter to the district court, highlighted Watson's longtime employment, his desire to "go down the spiritual lane," and his desire to "focus on [his] family and positive things." During allocution, Watson personally stated:

I would like to start off by saying that I made a mistake. And my mother was on the verge of losing everything, and I panicked. It still doesn't justify me breaking the law. And for that, I apologize. But I'm here today because I take full responsibility for my actions.

The State had "[n]o comments."

The district court stated it had reviewed and considered the PSR and several letters of support for Watson. The court questioned Watson's sincerity and cited his "substantial criminal history," "high LSCMI score," and status as a registered sex offender. The court also noted that Watson's drug dealings in connection with the offense nearly resulted in an overdose death. The court then sentenced Watson as set forth previously.

Watson argues the district court abused its discretion by failing to consider his personal circumstances. He specifically asserts the court "fail[ed] to properly weigh his mentality, education and employment experience, his motivation for the offense, and the lack of violence involved in the commission of the crime." Brief for appellant at 21.

Watson also argues there was insufficient evidence for the district court to infer "[s]omeone nearly died" as a result of his drug dealings. While there is some ambiguity in the record as to whether he was directly responsible for the overdose that led to his arrest, we find the court did not abuse its discretion at sentencing. The factual basis offered by the State at the plea hearing indicated investigators received information about Watson's criminal acts while "following up on an overdose investigation." Further, the PSR included a Lincoln Police Department case report wherein investigators asked Watson "about the cocaine that hurt Ian." In response, Watson told the investigators that he last sold cocaine to Ian "a few days ago," and the "cocaine that hurt Ian

would have been [the] cocaine that [he] sold Ian[.]" The PSR also contained a Lincoln Police Department Threat/Risk Assessment Form, which stated an "overdose" occurred in connection with Watson's offense. It was proper for the court to consider these facts during sentencing. See *State v. Meehan*, 7 Neb. App. 639, 585 N.W.2d 459 (1998) (sentencing court has broad discretion in source and type of evidence it may use in determining kind and extent of punishment to be imposed within limits fixed by statute; sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence). Further, there is no indication the court's sentence turned solely on its conclusion that Watson's actions were responsible for the overdose. Here, the court's sentencing decision was based, in large part, on Watson's "substantial criminal history," which was adequately supported by the PSR.

At the sentencing hearing, the district court heard statements from counsel and Watson and stated it considered the content of the PSR. These sources of information included the mitigating factors argued by Watson on appeal. While the court may not have explicitly referenced every factor, it is well-settled that a sentencing court is not required to articulate on the record that it has considered each sentencing factor and to make specific findings as to the facts that bear on each one. See *State v. Earnest*, 315 Neb. 527, 997 N.W.2d 589 (2023). Having reviewed the record, we cannot say the district court abused its discretion in sentencing Watson.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Watson's remaining assignments of error allege his trial counsel was ineffective in various ways.

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Watson has different counsel on direct appeal than he did in the district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

When a claim of ineffective assistance of trial counsel is raised on direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman, supra*. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty or no

contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

(a) Waiver of Preliminary Hearing

Watson first claims his trial counsel was ineffective for advising him to waive his right to a preliminary hearing. Watson argues that if he "had been advised to exercise his right to a preliminary hearing, then the [c]ounty [c]ourt could have found that there was insufficient probable cause" to support the charges against him. Brief for appellant at 22.

In response, the State submits Watson failed to sufficiently argue this assignment in his brief, and it should not be considered. Alternatively, the State contends Watson was not prejudiced by the waiver of a preliminary hearing because the county court would have found probable cause.

In Nebraska, a criminal defendant charged with a felony has a statutory right to a preliminary hearing. See Neb. Rev. Stat. §§ 29-506 and 29-1607 (Reissue 2016). The purpose of a preliminary hearing is to ascertain whether or not a crime has been committed and whether there is probable cause to believe the accused committed it. *State v. Archer*, 307 Neb. 330, 948 N.W.2d 762 (2020). Nebraska statutes allow for the written waiver of preliminary hearings when a defendant is represented by counsel. See Neb. Rev. Stat. § 29-4206(1) (Reissue 2016).

The complaint filed against Watson charged him with five felonies, making him entitled to a preliminary hearing. He filed a written waiver of his preliminary hearing with the county court on April 3, 2024. In that waiver, Watson stated trial counsel informed him of the nature of a preliminary hearing, and he understood that if he proceeded to a preliminary hearing and the State failed to show probable cause, the matter would be dismissed. Watson also stated that trial counsel advised him of his various constitutional rights and of the possible penalties for the charged offenses. The written waiver specifically states, "In exchange for my knowing, intelligent and voluntary waiver, the county attorney has agreed to provide me with a copy of the investigative reports." Watson personally signed the waiver of preliminary hearing.

Even if we were to conclude that Watson sufficiently argued this assignment of error in his brief, he cannot demonstrate prejudice. The county court would have found probable cause, and there is no reasonable probability that Watson would have insisted upon a trial in the absence of counsel's advice to waive the preliminary hearing.

The factual basis offered by the State at the plea hearing, as set forth previously, established that investigators seized cocaine, marijuana, firearms, and monies at Watson's residence. Watson also claimed ownership of these items during interrogation. The State certainly had enough evidence to demonstrate the crimes alleged in the complaint had been committed and probable cause that Watson had committed them. See *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002) (evidence supporting finding of probable cause at preliminary hearing need not be necessarily sufficient to sustain verdict of guilty when defendant is placed on trial). Since Watson was not prejudiced by his trial counsel's advice to waive his preliminary hearing, this claim fails.

(b) Failure to Advise of Independent Scientific Testing

Watson claims that his trial counsel was ineffective for failing to advise him of his right to independent testing of the cocaine discovered on his person and at his residence. Watson contends that had his counsel informed him of his right to independent testing, and had he chosen to exercise that right, any discrepancy in the result would have influenced him to exercise his right to a jury trial because the discrepancy would have raised reasonable doubt about the State's evidence.

The State argues Watson was not prejudiced by his trial counsel's failure to advise him of his right to independent scientific testing. We agree. Six baggies of suspected cocaine were seized at Watson's residence and subsequently tested by the Nebraska State Crime Patrol Laboratory. The testing confirmed a 99.73 percent probability the substances recovered were cocaine. There is nothing in the record or alleged in Watson's brief to suggest a second test would contradict these results. Watson cannot show a reasonable probability that he would have insisted on going to trial because of his counsel's failure to advise him of his right to independent scientific testing. See *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017) (no prejudice shown where counsel failed to advise defendant of right to independent testing when such testing would have been redundant and superfluous).

(c) Failure to Adequately Advise of Rights to
Speedy Trial and Jury Trial

Watson next claims that his trial counsel was ineffective for advising him to waive his rights to (1) a speedy trial and (2) a jury trial. Watson argues that if he "had not waived his right to speedy trial, then the State could have missed the six-month speedy trial deadline" required by Neb. Rev. Stat. § 29-1207(1) (Reissue 2016). Brief for appellant at 24. Watson further posits that his trial counsel "encourage[d] him to waive his right to a jury trial" without properly appraising him of his options. *Id.*

We note at the outset that Watson's waivers of his rights to a speedy trial and a jury trial were made in contemplation of his plea agreement with the State. Watson's main contention on appeal as to both assignments of error appears to be that his trial counsel failed to "properly consult[]" with him about the waivers. *Id.* at 9. As the State points out, both assignments of error essentially allege Watson's trial counsel was ineffective for failing to adequately advise him about the nature of his plea deal. Thus, we address both assignments together, in the context of the plea agreement.

The State argues the record affirmatively refutes Watson's claims that trial counsel failed to consult with him about the nature of the plea deal and his waivers. We agree. On August 19, 2024, a waiver hearing was held, and the following exchange took place:

> [Trial Counsel]: And Judge, Mr. Watson is going to waive jury, waive speedy, [and] ask that the matter be set over for plea to November 18, at 1:30.
>
> THE COURT: Mr. Watson, have you had an opportunity to speak with [your lawyer] about both of those rights?
>
> [Watson]: Yes, ma'am.
>
> THE COURT: Did you have any questions about those rights?
>
> [Watson]: No, ma'am.

THE COURT: Other than possibly a plea agreement, has anyone made any promises to you or threats against you to get you to waive those rights?

[Watson]: No, ma'am.

Further, at the plea hearing, the district court engaged Watson in the following colloquy:

THE COURT: Mr. Watson, have you discussed these plea proceedings that we're conducting here today with your lawyer?

[Watson]: Yes, ma'am.

THE COURT: And did he explain this charge to you together with the rights that we've been discussing?

[Watson]: Yes, ma'am.

THE COURT: Did he also discuss with you all of the possible defenses to this charge that you might have if you were to have a trial?

[Watson]: Yes, ma'am.

. . . .

THE COURT: Are you satisfied with the job that [trial counsel has] done as your attorney?

[Watson]: Yes, ma'am.

THE COURT: Do you feel he's a competent lawyer; he knows what he's doing?

[Watson]: Yes, ma'am.

THE COURT: Have you had enough time to talk with him about your case?

[Watson]: Yes, ma'am.

The colloquies at the waiver and plea hearings make it clear Watson had sufficient time to confer with trial counsel about the nature of the plea agreement, including his rights to a speedy trial and a jury trial. At no point did Watson express dissatisfaction with his trial counsel's performance or indicate he needed more time to consult with counsel about the effect of waiving his rights. The record establishes that he was properly advised of the plea agreement and his rights.

Even if Watson's trial counsel was somehow deficient for advising him to accept the plea offer and waive his rights to a speedy trial and jury trial, his claim would fail because he cannot demonstrate prejudice. The likelihood of Watson's success had he insisted on going to trial is relevant to the prejudice analysis. See *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019) (likelihood of defendant's success is relevant to consideration of whether rational defendant would have insisted on going to trial). The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id*.

The plea agreement reduced the charges against Watson from five felonies to one and greatly lowered his potential penalties. The record also shows the State had strong evidence against Watson, including the cocaine, marijuana, firearms, and monies seized from his residence and his various inculpatory admissions. Given the other potential charges and the strength of the evidence against Watson, he cannot show a reasonable probability that but for the alleged error of trial

counsel, he would have insisted on going to trial rather than waiving his rights and pleading no contest.

Since Watson's claim is refuted by the record and/or he cannot establish prejudice, these claims fail.

### (d) Failure to File Motion to Suppress

Watson claims his trial counsel was ineffective for failing to file a motion to suppress his arrest. He argues that investigators did not have probable cause to arrest him after they made contact and ordered him out of his vehicle at the retail store parking lot. "[T]he District Court may have suppressed the arrest, which would likely have led to a different outcome had the State been unable to present the evidence derived from the arrest." Brief for appellant at 25.

At the plea hearing, the following colloquy was had on the record.

> THE COURT: If there was a search and seizure of any evidence in your case by law enforcement officers, or if you made any statement, admission or confession to law enforcement officers, by entering your plea, you're forever waiving and giving up your right to challenge the legality of any search and seizure, or your right to challenge the legality of any statement, admission, or confession that you may have made. Do you understand that?
>
> [Watson]: Yes, ma'am.
>
> THE COURT: And in regard to that, you'd be entitled to have a hearing, prior to any trial, and have the Court decide whether or not any evidence was taken from you illegally, or whether or not any statement, admission or confession was obtained from you illegally. If the Court determined that that in fact did happen, the Court would not allow the State to use that evidence at a trial. But by entering your plea you're waiving and giving up your right to have such a hearing. Do you understand that?
>
> [Watson]: Yes, ma'am.

Watson confirmed he was waiving and giving up his rights freely and voluntarily. He also confirmed discussing all possible defenses to the charge and affirmed that he had enough time to talk to his attorney about his case.

Regardless of whether Watson's trial counsel may have been deficient for failing to file a motion to suppress the arrest, Watson would be unable to establish prejudice given the colloquy set forth above between him and the district court where he specifically gave up any right to have a separate hearing to challenge the evidence seized. Watson cannot establish that he would have insisted on going to trial when he personally informed the court he was willing to give up his right to challenge the seized evidence and wished to enter his plea. Since Watson was not prejudiced by trial counsel's alleged failure to file a motion to suppress the arrest, this claim fails.

### (e) Failure to Investigate

Watson claims his trial counsel was ineffective for failing to investigate the connection between his drug dealing and the overdose that led to his arrest. He argues this negatively impacted him at sentencing because the district court concluded "'[s]omeone nearly died'" as result of his

previous drug dealings. Brief for appellant at 26. Watson asserts the court "may have imposed a more lenient sentence" if trial counsel had worked to dispel the connection. *Id.* at 27.

Even if trial counsel was deficient in not adequately investigating the connection between Watson's drug dealing and the overdose that led to his arrest, Watson cannot demonstrate prejudice. As set forth previously, the district court's sentencing decision did not rest solely on Watson's connection to the overdose. The court also relied on the fact that Watson had a "substantial criminal history," had a high LS/CMI score, was a registered sex offender, and had previously gone to prison for motor vehicle homicide in 2020. Even if trial counsel had dispelled the nexus between Watson and the overdose at issue, there is no indication the court would have imposed a more lenient sentence. Watson's claim fails.

### (f) Failure to Raise Constitutional Defense

Finally, Watson claims his trial counsel was ineffective for failing to advise him about the "availability of a defense based on the unconstitutionality" of Neb. Rev. Stat. § 28-416(16) (Cum. Supp. 2024). Brief for appellant at 10. In arguing this claim, he contends "an attorney of ordinary training and skill in criminal law would have recognized and asserted" a defense based upon the Second Amendment to the United States Constitution. Brief for appellant at 30.

As the State points out, Watson's contention fails as a matter of law. The Nebraska Supreme Court has stated that counsel's failure to raise novel legal theories or arguments or to make novel constitutional challenges in order to bring about a change in existing law does not constitute deficient performance. See *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017). Accordingly, Watson's final claim fails.

### VI. CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in sentencing Watson. We further find that Watson's ineffective assistance of trial counsel claims fail. We therefore affirm his conviction and sentence.

AFFIRMED.